1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

SAMER KAZAN, et al.,

CASE NO. C15-1251-BJR

11

Plaintiffs,

ORDER GRANTING PLAINTIFFS'
MOTION FOR PARTIAL

12

v.

SUMMARY JUDGMENT AND
STRIKING MOTION REGARDING

13

WALTER KENNEDY and ANNE
KENNEDY,

SPOLIATION OF EVIDENCE

14

Defendants.

15

16

## I.    INTRODUCTION

17

18

Plaintiffs Samer, Reine, Samir and Catherine Kazan bring this action against Defendant

19

Walter Kennedy, alleging causes of action for negligence and loss of consortium arising out of

20

injuries that occurred when a bus driven by Defendant Walter Kennedy struck Plaintiff Samer

21

Kazan.  Plaintiffs have brought two motions before the Court: (1) a motion for partial summary

22

judgment finding that Defendant was negligent as a matter of law and dismissing any

23

contributory negligence defense, and (2) a motion for sanctions due to spoliation of evidence

24

arising out of the loss of Defendant's cell phone prior to their examining it.  Defendants oppose

1  the motions.  Having reviewed the parties' briefs along with all relevant materials, and finding

2  that oral argument will not be helpful in further clarifying the issues, the Court GRANTS partial

3  summary judgment in Plaintiffs' favor on the issue of Defendant's negligence and Defendant's

4  theory of Plaintiff's contributory negligence.  In light of this ruling, the Court STRIKES

5  Plaintiffs' request for sanctions due to spoliation of evidence as moot.

6                           **II.     FACTUAL BACKGROUND**

7           The record consists of deposition testimony given by the following people: Plaintiff

8  Samer Kazan; Defendant Walter Kennedy; witness James Thompson, who was walking behind

9  Plaintiff prior to his being struck; witness Claire Sutherland, who was seated her in car at the

10 intersection in which the accident occurred; and witness Stephanie Hughes, who was standing

11 diagonally across the street from the scene of the accident.  This record, from which the Court

12 must draw all reasonable inferences in favor of the nonmoving party (*Anderson v. Liberty Lobby,*

13 *Inc.* 477 U.S. 242, 55 (1986)), consists of the following material facts:

14          On the afternoon of  July 23, 2015, Plaintiff Samer Kazan, an Amazon employee, was

15 walking south on Westlake Avenue in Seattle from one building in which he worked to another.

16 Decl. of Cochran, Exh. 1 ("Kazan Depo") at 122:24-123:10, 178:9-10.   Defendant Walter

17 Kennedy (d/b/a Oncore Coach Leasing) was driving his bus north on Westlake Avenue.

18 According to Plaintiff,  the traffic light at the intersection of Westlake Avenue and Thomas

19 Street showed a white "Walk" signal.  Plaintiff testified that he entered the crosswalk and was

20 struck by the bus driven by Defendant, who was turning left from Westlake onto Thomas.  *Id.* at

21 131:10-11, 132: 9-10, 134:18-20.

22          Witness Thompson  was  walking  southbound  behind   Plaintiff  on  the  west  side  of

23 Westlake  Avenue  when  both  reached  the  intersection  of  Westlake  and  Thomas.   Decl.  of

24

ORDER GRANTING PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT AND
STRIKING MOTION REGARDING SPOLIATION
OF EVIDENCE- 2

Cochran, Exh. 2 ("Thompson Depo") at 47:6-10, 59:5-13, 67:23-25.   According to witness Thompson, when  he reached the intersection of the two streets  Plaintiff was in front of him. Thompson's testimony is that the pedestrian indicator was a white "Walk" signal when both men entered the crosswalk.  *Id.* at 43:14, 44:7-10, 46:1-5, 47:18-19.   Thompson stepped briefly into the crosswalk, but saw Defendant commencing a left turn from Westlake onto Thomas and retreated back onto the sidewalk.  *Id.* at 75:11-21.   Thompson testified that he saw the bus contact  Plaintiff, push him sideways and to the west down Thomas Street for "a couple feet" before  Plaintiff fell down and went under the bus.  *Id.* at 70:11-15, 70:22-71:13, 77:14-21. According to Thompson, he yelled at Defendant to stop; once the bus halted he directed it to back up, which it did, uncovering the injured Plaintiff.  *Id.* at 78:12-13 and 21-23, 80:10-11, 80:23-81:2.

Witness Sutherland was parked on the northwest corner of Westlake and Thomas, seated behind the wheel with the rear of her vehicle protruding slightly into the crosswalk, facing west. According to Sutherland, there was not enough space between her car and the car parked in front of her for someone to walk through. Decl. of Cochran, Exh. 4 ("Sutherland Depo") at 94:19-21. She testified that she was waiting for a valet to come and get her car and noticed  Plaintiff coming towards her, facing in her direction.  She remembers seeing his face and torso turned towards her, moving quickly.  *Id.* at 53:3-7.  She did not see him cross in front of her car prior to this; when she saw him, he was parallel to the front left tire of her car (*Id.* at 54:24-55:4), outside of the crosswalk.  *Id.* at 94:22-95:13.  According to Sutherland, she saw the bus "in the middle of the road… very close to the man who got hit" (*Id.* at 57:10-12) and, believing that the bus was going to hit  Plaintiff, she turned her head away and called 911.  *Id.* at 58:23-59:5.

ORDER GRANTING PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT AND
STRIKING MOTION REGARDING SPOLIATION
OF EVIDENCE- 3

1       Witness Hughes was standing on the southeast corner of the intersection of Westlake and

2 Thomas (diagonally from where Plaintiff entered the street), waiting for the signal to change so

3 she could cross Westlake.  Decl. of Patterson, Ex. B ("Hughes Depo"), 15:6-10.  According to

4 Hughes, she saw the bus on the street in front of her turning left from Westlake onto Thomas.  *Id.*

5 at 15:16-18, 16:20-17:2.  She testified that she heard "a noise, like someone kind of like in

6 agony." *Id.* at 17:15-16.   Hughes said that, based on where the bus was when she heard the

7 "noise," she believes that the accident occurred outside of the crosswalk.  She admits, however,

8 that she never actually saw Plaintiff get struck by the bus. *Id.* at 23:6-25.

9       According to Defendant, he saw neither Plaintiff nor Thompson as he was making the

10 left turn from Westlake onto Thomas.  Decl. of Cochran, Ex. 5 ("Kennedy Depo") at 34:5-11,

11 38:12-16, 86:20-87:1.  He testified that no one was in the crosswalk when he commenced his

12 turn from Westlake to Thomas.  *Id.* at 87:1-4, 93:15-20.  He did not apply the brakes of the bus

13 until after he heard the sound of the bus connecting with Plaintiff's body (a sound he described

14 as a "tap"). *Id.* at 88:7.  Asked for an explanation of how Plaintiff came to be in front of his bus,

15 he answered "I don't know how he got out where he was." *Id.* at 93:24-25.

16                         **III.    LEGAL STANDARD**

17       Summary judgment is proper "if the movant shows that there is no genuine issue as to

18 any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

19 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue

20 of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In deciding a summary

21 judgment motion, the court must view the evidence in the light most favorable to the non-moving

22 party and draw all justifiable inferences in its favor.  *Anderson v. Liberty Lobby, Inc.* 477 U.S.

23 242, 55 (1986).

24

1    The moving party is only required to assert that the party with the burden of proof cannot

2    carry that burden, and "that there is an absence of evidence to support the nonmoving party's

3    case." *Celotex*, 477 U.S. at 325.  On those issues where he bears the burden of proof, Defendant

4    must present actual evidence to successfully oppose the motion and may not rest on allegations,

5    speculations or opinion.  *Anderson*, 477 U.S. at 248.

6                    **IV.    CONTRIBUTORY NEGLIGENCE AND NEGLIGENCE**

7    Plaintiffs seek summary judgment (1) dismissing Defendant's affirmative defense of

8    contributory negligence and comparative fault, and (2) finding that Defendant was negligent as a

9    matter of law.

10   **A.  Plaintiff was not contributorily negligent**

11   A person's contributory negligence is determined based on an inquiry regarding "whether

12   or not he exercised that reasonable care for his own safety which a reasonable man would have

13   used under the existing facts and circumstances, and, if not, was his conduct a legally

14   contributing cause of his injury."  *Huston v. Church of God*, 46 Wn.App. 740, 747, *rev. denied*,

15   108 Wn.2d 1018 (1987).

16   According to Defendant, Plaintiff was contributorily negligent.  Defendant attempts to

17   create disputed issues of material fact around the question of (1) whether or not Plaintiff was in

18   the crosswalk when he was struck, (2) whether he entered the intersection when the crosswalk

19   signal read "Walk," and (3) whether he was "jogging" or walking across the street.  It is an

20   unsuccessful effort.

21   Defendant, in his opposition, relies on the testimony of two witnesses to assert that

22   Plaintiff was out of the crosswalk when struck by Defendant's bus: Sutherland, who reported

23   seeing  Plaintiff outside of the crosswalk with his face and torso turned toward her, parallel with

24

ORDER GRANTING PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT AND
STRIKING MOTION REGARDING SPOLIATION
OF EVIDENCE- 5

1  her left front tire; and Hughes, who reported hearing "a noise, like someone kind of like in

2  agony" at a time when she saw the front of the bus beyond the crosswalk area.  What is most

3  noteworthy about both accounts is that neither of these witnesses saw Plaintiff enter the street or

4  observed the actual collision.

5       Both Thompson and Plaintiff are unequivocal in their testimony that Plaintiff was

6  walking in a southerly direction along the west side of Westlake, that he entered the intersection

7  within the crosswalk and that the pedestrian traffic signal was a white "Walk" indicator at that

8  time.  Defendant's attempts to cast doubt on the reliability and credibility of both witnesses are

9  unavailing.

10       Defendant alludes to Plaintiff's "spotty" memory of the incident, but the transcript

11  excerpts he cites (*see* Response at 14) all concern Plaintiff's memory of events <u>after</u> he was

12  struck by the bus, moments where Plaintiff understandably reports that the details are "fuzzy."

13  Kazan Depo at 9:3.  Regarding whether he entered the intersection inside the crosswalk and

14  whether the pedestrian traffic indicator was white when he entered the crosswalk, he testified

15  that he is "one hundred percent sure." *Id.* at 134:12-20.[1]

16       Plaintiff's testimony is corroborated by the only other eyewitness who observed the

17  collision, a witness who was directly behind Plaintiff  and reports unequivocally that Plaintiff

18  proceeded across the street in the crosswalk with a white "Walk" signal.  The Court is

19  unpersuaded by the aspersions cast by Defendant on  Thompson's credibility.  The fact that his

20  testimony regarding Plaintiff's pace changed from "jogging" to "walking quickly" is not

21

---

22     [1] The Court also rejects Defendant's attack on Plaintiff's credibility based on allegedly inaccurate
testimony that he was dragged 20 or 30 feet by the bus.  The sources that Defendant cites for that testimony are

23  medical reports prepared by doctors who examined Plaintiff (*see* Decl. of Patterson, Exs. G and H).  There is no
evidence in those records that Plaintiff provided this information, nor any rationale provided as to why the Court

24  should overlook the inherently suspect hearsay nature of the document.

ORDER GRANTING PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT AND
STRIKING MOTION REGARDING SPOLIATION
OF EVIDENCE- 6

relevant; as discussed below, whether Plaintiff was jogging or walking quickly does not affect the liability determination under the facts before the Court and is not a sufficiently significant difference to discredit the remainder of Thompson's testimony.

Similarly, the alleged discrepancy between Thompson's testimony that, at the point he saw Defendant's bus, stopped and returned to the curb, he was "close enough to touch [Plaintiff]," "between 3 and 4 feet" away and his testimony that, when the collision occurred, Plaintiff was "well past the halfway point of the crosswalk" (based on a hand-drawn "X" on a photograph of the intersection; *see* Decl. of Cochran, Ex. 24), is *de minimis* for two reasons.

First, Defendant ignores another sketch of the accident scene that Thompson created on the day of the event (*see id.*, Ex. 23) where he places Plaintiff's body at a point much closer to the northwest corner of the intersection and more congruent with the photograph produced by Defendant showing the location of the bus after it had backed up. Decl. of Patterson, Ex. I. Second, assuming that Plaintiff was moving rather rapidly (either "jogging" or "walking quickly") at the point where he left the curb and Thompson briefly entered the intersection, saw the bus and retreated, it would only have been a matter of seconds before Plaintiff would have been 10-12 feet away from Thompson. There is no discrepancy or lack of credibility arising from these disparate pieces of evidence.

Finally, Defendant suggests that, as Thompson and Plaintiff (who did not know each other) are both employees of Amazon, there may be a possibility of "bias towards his coworker." Response at 15. The Court rejects the suggestion that two strangers who work for a mega-corporation employing tens of thousands of individuals might, based on their common employer alone, be favorably disposed towards each other sufficiently to fabricate or exaggerate testimony and Defendant presents nothing more to support this theory than his speculation. In the final

ORDER GRANTING PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT AND
STRIKING MOTION REGARDING SPOLIATION
OF EVIDENCE- 7

1    analysis, the only testimony that establishes the facts critical to assessing liability in this incident

2    – the direction in which Plaintiff was walking, the point at which he entered the street and the

3    status of the pedestrian traffic signal – comes from Plaintiff and Thompson.

4        Regarding the witnesses proffered by Defendant in support of his version of the events,

5    Sutherland herself acknowledges she did not see Plaintiff enter the street, and the direction in

6    which he was facing when she initially saw him (face and torso towards her, moving in a

7    completely different direction than he started out) logically supports only one conclusion: that

8    she first saw Plaintiff after his initial contact with Defendant's bus, which contact propelled him

9    in the opposite direction from which he was originally moving.[2]  This conclusion is corroborated

10   by Thompson's testimony that Plaintiff's initial contact with Defendant's bus pushed him

11   sideways and west (i.e., toward where Sutherland was parked) for "a couple of feet" before

12   Plaintiff went under the bus.  Thompson Depo. at 70:11-15, 70:22-70:13, 77:14-21.  Contrary to

13   Defendant's argument, the Court does not find Sutherland's testimony at odds with Plaintiff's or

14   Thompson's; she simply saw the portion of the accident which occurred *after* Plaintiff was first

15   struck.  Nor does the Court  believe Sutherland is reporting what she saw inaccurately, only that

16   her testimony does not establish what Defendant purports it to establish.

17       Regarding Hughes' testimony, the Court again points out the key fact that this witness

18   never saw Plaintiff enter the street or witnessed him being struck by the bus.  She saw a bus

19   turning and then (when the front of the bus was beyond the crosswalk) heard a sound that she

20   described as "a noise, like someone kind of like in agony."  Defendant would like the Court to

---

22   [2] The Court likewise discounts the opinion of Defendant's expert  Wells, first for its reliance on the
23   assumption that Sutherland's testimony indicates that Plaintiff was <u>first</u> struck by Defendant's bus outside the
     crosswalk and second for its conclusion that  Kazan first came into contact with the bus 15 feet west of the
     crosswalk; a calculation that is totally at odds with Sutherland's testimony (that Plaintiff was parallel with her left
24   front tire that was, at most, 8-10 feet west of the crosswalk).  *See* Decl. of Wells, ¶¶ 7, 9-10, 14.

1  conclude from that testimony that this was the point at which the bus first struck Plaintiff, but

2  there is nothing else in the evidence that logically supports that conclusion.  No one else reports

3  hearing Plaintiff cry out when he was struck; the only loud noises the evidence shows are

4  Thompson's yells to Defendant to stop his bus after he had struck Plaintiff.  And even if the

5  Court (viewing the evidence in the light most favorable to Defendant) were to assume that the

6  cries were Plaintiff's, that fact establishes no genuine issue about where he was located when he

7  was first struck by the bus, a fact to which Hughes cannot attest.

8      Defendant presents one other piece of evidence purportedly from Hughes, an audio

9  recording contained in a video from a police "dash cam" in which a woman can be heard to say

10 that the crosswalk pedestrian light was "counting down" when she heard the cry.  Decl. of

11 Patterson, Ex. J.  Plaintiff has moved to strike this evidence as hearsay and the Court will grant

12 that motion – the audio recording (unquestionably an out of court statement submitted for the

13 truth of the matter asserted) was presented without a foundational declaration or other

14 evidentiary support and it will be stricken.[3]

15     Defendant also attempts to assert that he himself made statements that establish a genuine

16 issue of material fact in this matter; namely, Hughes' testimony that, at the time of the accident,

17 Defendant made a statement to the effect of "He just came out of nowhere."   Hughes Depo at

18 25:10-12, 26:22-27:1.   Hearsay problems aside, since this statement (to the extent it suggests

19 that Defendant actually saw Plaintiff before his bus struck him) contradicts Defendant's own

20

21 _____

22     [3] Even if it the Court were to admit it (and assume that Hughes was the speaker), the statement does not
    establish the proposition that Defendant seeks to propound.  Because Hughes did not see Plaintiff enter the

23 intersection, she cannot testify as to what the state of the pedestrian traffic indicator was at that point in time, which
    would be the critical juncture for proving that Plaintiff attempted to cross the street in a negligent or reckless
    fashion.  Additionally, Hughes has testified that she does not remember whether she made this statement.  Hughes

24 Depo at 30:5-7, 23-25; 45:9-13.

sworn testimony that he saw neither Plaintiff nor Thompson, it will not suffice to create a disputed issue of material fact.

The Court is aware that summary judgment case law requires that the facts be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 55 (1986). However, the Court is not required to abandon common sense or logic in the process; is, in fact, only required to draw "justifiable" inferences in Defendant's favor. The facts as adduced by Defendant do not justifiably lead to the conclusion he wishes this Court to draw, nor do they create genuine issues of material fact concerning the undisputed items of evidence that have been presented; namely, that the only two percipient witnesses to the prelude and onset of this accident establish that Plaintiff entered the crosswalk with the white "Walk" signal and was struck therein by Defendant's bus.

With that factual underpinning, the Court turns to the question of Defendant's affirmative defense of contributory negligence.

> Although the law does not permit a pedestrian to walk "suddenly" into a crosswalk so that an approaching vehicle cannot stop, RCW 46.61.235(2), Washington courts have long recognized that a pedestrian in a crosswalk "may assume that the driver of a vehicle will recognize the pedestrian's right of way." *Knight v. Pang*, 32 Wn.2d 217, 232, 201 P.2d 198 (1948);

*Xiao Ping Chen v. City of Seattle*, 153 Wn. App. 890, 906, 223 P.3d 1230, 1238-39 (2009).

Having found that the facts establish Plaintiff was within the crosswalk and entered on a white "Walk" signal, the Court will not analyze further Defendant's contributory negligence arguments based on an assumption that Plaintiff was outside the crosswalk when first struck by Defendant's bus. However, Defendant also argues for a contributory negligence defense that survives even if Plaintiff was within the crosswalk.

ORDER GRANTING PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT AND
STRIKING MOTION REGARDING SPOLIATION
OF EVIDENCE- 10

1    First, Defendant cites to municipal and state regulations prohibiting a pedestrian from

2    stepping into the path of a vehicle if it is impossible for the vehicle to stop in time to avoid

3    hitting that person.  SMC 11.40.060, RCW 46.61.236.  There is no evidence this was the case.

4    Defendant's own testimony is that he was driving "[a]round five miles per hour."  Kennedy

5    Depo. at 156:2.  Had he not failed to see Plaintiff in the crosswalk, it would have been possible

6    for him to stop in time to avoid hitting  Plaintiff as the bus proceeded across the two southbound

7    lanes of Westlake to complete its left turn.

8    Defendant also cites a jury instruction approved in a 1970 Washington case in which  the

9    jury was instructed concerning the duty of a pedestrian: "One is charged with the duty of seeing

10   that which he would have seen had he been exercising ordinary care."  The Washington Court of

11   Appeals held that such an instruction was "proper and sufficient."  *Cakowski v. Oleson*, 1 Wn.

12   App. 780, 783 (1970).  Defendant argues that Washington law imposes a duty upon pedestrians

13   like Plaintiff to maintain vigilance about oncoming vehicular traffic even if they are in a

14   crosswalk.

15   Plaintiff asserts – and the Court agrees --  that the tension between a pedestrian's

16   crosswalk right-of-way and this apparent duty to be on the lookout for errant drivers was

17   resolved by the Washington State Supreme Court in 1969.  Citing an even earlier state court

18   opinion, the Washington Supreme Court held that "[i]f the conceded right of way means

19   anything at all, it puts the necessity of continuous observation and avoidance of injury upon the

20   driver of the automobile when approaching a crossing…"  *Jung v. York*, 75 Wn.2d 195, 198

21   (1969)(quoting *Johnson v. Johnson*, 85 Wash. 18, 25-26 (1915)).

22

23   The *Jung* court's finding regarding that plaintiff applies equally here:

24
ORDER GRANTING PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT AND
STRIKING MOTION REGARDING SPOLIATION
OF EVIDENCE- 11

A pedestrian cannot at one and the same time have a right to assume that the right of way will be yielded and a duty to look to make sure that it is. In the absence of circumstances which would alert the pedestrian rightfully in the crosswalk to the fact that an approaching vehicle is not going to yield, negligence cannot be predicated on his failure to look and see the vehicle in time to avoid the accident.

*Id.*    The Washington Court of Appeals ruling in *Cakowski* loses its precedential value in the face of this holding.  As another Court of Appeals decision observed, "*[Cakowski]*'s persuasiveness is mooted by the mandated application of *Jung v. York…*"  *Johnson v. Strutzel*, 14 Wn.App. 620, 622 (1975).

Similarly, whether Plaintiff was "jogging" or "walking quickly" is of no import if he was rightfully within the crosswalk and proceeding with a "Walk" signal.  Pedestrians may run across the street if they do so within a designated crosswalk when they have the right of way.

Based on the foregoing analysis, the Court will GRANT Plaintiff's motion for summary judgment dismissing Defendant's affirmative defense of contributory negligence.

**B.  Defendant Walter Kennedy was negligent**

"The elements of negligence are duty, breach, causation, and injury."  *Hartley v. State*, 103 Wn.2d 768, 777 (1985).  "It is the duty of a driver approaching a crossing to maintain a continuous observation in order to avoid injuring a pedestrian…" *Burnham v. Nehren*, 7 Wn.App. 860, 865 (1972).  The Washington State Supreme Court has spoken on the duty of a driver in Defendant's position:

1. The driver shall yield the right-of-way, slowing or stopping, if necessary, to a pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling or approaching so closely from the opposite half of the roadway as to be in danger. [*citations omitted*]

2. It is the duty of a driver approaching a crossing to maintain a continuous observation in order to avoid injuring a pedestrian and failure on the part of a driver to yield the right-of-way to a pedestrian constitutes negligence per se if the pedestrian was seen or should have been seen by the driver. *Oberlander v. Cox,* [75 Wn.2d 189 (1969)]*; Ross v. Johnson,* 22 Wn.2d 275, 155 P.2d 486 (1945).

ORDER GRANTING PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT AND
STRIKING MOTION REGARDING SPOLIATION
OF EVIDENCE- 12

3. A driver is negligent as a matter of law if he fails to yield the right-of-way to a pedestrian in a crosswalk in the absence of evidence of unusual circumstances. *Daley v. Stephens,* 64 Wn.2d 806, 394 P.2d 801 (1964).

*Burnham v. Nehren*, 7 Wn. App. 860, 865 (1972). The only "evidence of unusual circumstances" in this case is Defendant's failure to see either Plaintiff or Thompson in the crosswalk, a singularity that does not inure to his benefit.

Plaintiffs introduce, as further evidence of Defendant's negligence, the records of Defendant's cell phone that indicate phone activity at or near the time of the accident. Defendant denies being on his phone at the time of the accident. Kennedy Depo at 157:15-158:8. Defendant submits a document purporting to be an online "chat" with a Verizon phone representative who represents that a cell phone record indicating phone activity at a certain time does not mean that the cell phone owner was actually speaking on the phone; i.e., it may simply indicate an incoming call that the cell phone owner did not answer. Decl. of Patterson, Ex. F.

Plaintiffs move to strike the document as hearsay. Defendant even concedes that the report of the online conversation is hearsay, but argues nevertheless that his opposing interpretation of the cell phone records creates a genuine issue of material fact. Response at 16 fn. 10. The Court will strike the evidence as hearsay. But the Court further finds the parties' submissions inconclusive as to whether or not Defendant was using his cell phone at the time of the accident and therefore will not find that the records proffered by Plaintiff constitute further evidence of Defedant's negligence.

Nevertheless, the Court is compelled to find there is no genuine issue of material fact regarding Plaintiff's presence in a crosswalk that he entered with a white "Walk" signal, to find the existence of a duty on Defendant's part to yield the right of way under such circumstances and to find, as a matter of law, that Plaintiffs are entitled to a summary judgment of negligence

1  on the part of Defendant in proximately causing injury to  Plaintiff with his bus while in that

2  crosswalk.

3  ## V.  SPOLIATION OF EVIDENCE

4  The gravamen of this motion is relatively straightforward: based on a review of

5  Defendant's cell phone records, Plaintiffs developed a suspicion he may have been on his cell

6  phone at the time of the accident.  On that basis, they requested that Defendant produce his cell

7  phone for inspection (Dkt. No. 75, Ex. 18), to which Defendant responded that he had lost the

8  phone on a fishing trip weeks before when it fell of a boat into a river.  Decl. of Cochran at Ex. 9.

9  Plaintiffs seek sanctions against Defendant for spoliation of evidence.  In light of the fact

10  that the Court is awarding summary judgment to Plaintiff on the issue of Defendant's negligence,

11  Plaintiff's motion for spoliation of evidence is moot and the motion is STRICKEN.

12  ## VI.  CONCLUSION

13  Defendant has failed to establish a genuine issue of material fact regarding Plaintiffs'

14  proof that  Plaintiff entered a crosswalk with a white "Walk" signal and was in the crosswalk at

15  the time he was struck by Defendant's bus, undisputed facts that entitle Plaintiffs to a finding as

16  a matter of law that Defendant was negligent and  Plaintiff was not contributorily negligent.  In

17  light of this ruling, Plaintiffs' request for sanctions due to spoliation of evidence resulting from

18  the loss of Defendant's cell phone is moot; that motion will be stricken.

19  The clerk is ordered to provide copies of this order to all counsel.

20  Dated this 18th day of October, 2016.

21

22

23  Barbara Jacobs Rothstein
    U.S. District Court Judge

24
ORDER GRANTING PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT AND
STRIKING MOTION REGARDING SPOLIATION
OF EVIDENCE- 14